UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

THOMAS H. MARLOWE,

                Petitioner,

    v.                                                9:19-CV-0757
                                                        (MAD/DJS)

FLOYD BENNETT, Superintendent,

                Respondent.
_____

APPEARANCES:                                    OF COUNSEL:

THOMAS H. MARLOWE
Petitioner, pro se
83-C-0834
Washington Correctional Facility
Box 180
72 Lock 11 Lane
Comstock, NY 12821

MAE A. D'AGOSTINO
United States District Judge

**DECISION and ORDER**

**I.    INTRODUCTION**

In 1997, petitioner Thomas Marlowe filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. *Marlowe v. Bennett*, No. 9:97-CV-0470 (DNH/GJD) ("*Marlowe I*"), Dkt. No. 1, Petition. The petition was denied and dismissed pursuant to this Court's Decision and Order dated December 16, 2002. *Id.*, Dkt. No. 30, Report & Recommendation, *adopted by*, Dkt. No. 32, Decision and Order. Petitioner unsuccessfully appealed the decision to the United States Court of Appeals, Second Circuit. *Id.*, Dkt. No. 34, Notice of Appeal; Dkt. No. 37, Mandate (dismissing appeal for lack of certificate of appealability); Dkt. No. 38, Order (denying petitioner's motion for certificate of appealability from this Court); Dkt. No. 39, Mandate (denying motion for certificate of appealability because no "substantial

showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c) was demonstrated).

On December 1, 2016, the Second Circuit issued another Mandate denying petitioner's motion for leave to file a successive habeas petition pursuant to 28 U.S.C. § 2254. *Marlowe I*, Dkt. No. 40, Mandate. Specifically, the Second Circuit held that (1) petitioner's motion did not satisfy either prong of 28 U.S.C. §2244(b)(2); (2) petitioner's actual innocence claim failed to establish that "it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt;" and (3) petitioner failed to demonstrate factual innocence for the crimes of which he was convicted. *Id.* at 1-2 (internal quotation marks and citations omitted).[1]

Petitioner then filed the present submission in *Marlowe I*. *Marlowe I*, Dkt. No. 41. On June 26, 2019, this Court noted that "[p]etitioner . . . attempted to file an amended petition or some other type of supplemental submission in support of his original petition . . . However, this action [i]s closed[.]" *Id.*, Dkt. No. 42, Text Order dated 06/26/2019. Accordingly, given the special solicitude afforded to pro se litigants, the Court construed the submission as a new petition, which was assigned a new case number for further proceedings. *Id.*; *see also* Dkt. No. 1, Petition ("Pet.").

On June 26, 2019, the Court administratively closed the action because it had not been properly commenced: petitioner did not pay the statutory filing fee or file a properly certified in forma pauperis ("IFP") application. Dkt. No. 2. On July 8, 2019, the Court received the statutory filing fee, and the case was reopened. Dkt. No. 3; Text Order dated

---

[1] Citations to the various submissions, Court Orders, and Mandates refer to the pagination generated by CM/ECF, the Court's electronic filing system.

2

07/08/19 (identifying receipt number for filing fee); Dkt. No. 4, Text Order Reopening Case.

It seems petitioner readily acknowledges that this submission is linked to his prior petition. First, it was initially filed in his prior case, *Marlowe I*. Second, petitioner contends that he "can demonstrate objective factors that impeded petitioner's efforts to raise the instant claim in [his] prior petition." Pet. at 4. Accordingly, the petition must be transferred to the Second Circuit.

## II.    PREVIOUS HABEAS PETITIONS

Petitioner previously filed one habeas petition in the Northern District. *Marlowe I*, Dkt. No. 32, *adopting*, Dkt. No. 30. Petitioner challenged a 1983 judgment of conviction, upon a jury verdict, in Broome County for second degree murder and first degree robbery. *Marlowe I*, Dkt. No. 30 at 6 (citing *People v. Marlowe*, 144 A.D.2d 104, 104 (3rd Dep't 1988). Petitioner argued that he was entitled to relief because

> (i) the prosecution wrongfully suppressed *Brady* material; (ii) there was insufficient evidence presented at trial to support the convictions; (iii) he received ineffective assistance of trial counsel; (iv) Marlowe was denied a fair trial because members of the jury observed Marlowe in shackles; and (v) the sentence imposed on Marlowe was harsh and excessive.

*Id.* at 9. The petition was denied and dismissed. *Marlowe I*, Dkt. No. 32, *adopting*, Dkt. No. 30.

With respect to the alleged *Brady* violation, the Court held that (1) the Third Department was correct in finding that the allegedly exculpatory comments made against petitioner's co-defendant's penal interest were not favorable to petitioner; therefore, they were insufficient to create an actionable *Brady* claim (*Id.*, Dkt. No. 30 at 12-13); (2) petitioner failed to show that the prosecution was aware of his co-defendant's statements allegedly

3

exculpating petition prior to or during the trial; therefore, any related *Brady* claims must fail (*id.* at 15); and (3) the state court's decision rejecting petitioner's claims was not contrary to or an unreasonable application of *Brady* or determination of the facts because petitioner's trial admission, specifically that he knew his co-defendant intended to rob the store armed with a gun, even in light of the alleged exculpatory evidence that petitioner was unaware the co-defendant intended on killing anyone, negated any reasonable probability that presentation of the alleged exculpatory evidence would have led to a different result (*Id.* at 16-18).

This Court also found that the state courts' decisions finding sufficient evidence to support petitioner's conviction were not contrary to or an unreasonable application of the law, nor based upon an unreasonable determination of the pertinent facts. *Id.* at 19-21.

Further, the state courts' decision denying petitioner's ineffective assistance of counsel claims was not unreasonable because (1) petitioner's proposed alternative argument that (a) he was under duress at the times the crimes were committed were based on "rank speculation;" (*id.* at 23-25) and (b) had counsel advanced such a theory, "there is a reasonable probability that the outcome of the proceeding would have been different." (*id.* at 26); (2) petitioner's contentions that his counsel's advice to cut his hair unwittingly made him fit into the description of the perpetrator is meritless given petitioner's testimony that he went with his co-defendant to the store on the day of the robbery and murder (*id.* at 27-28); and (3) petitioner's arguments that a polygraph examination should have been administered are belied by the facts that there is no proof such results would have been admitted given their judicially noted unreliability (i*d.* at 29).

Moreover, this Court held that "[t]here is no evidence that the claimed viewing of

4

[petitioner] in shackles prejudiced him in any way or otherwise deprived him of a fair trial . . . There was ample evidence offered at trial which established that [petitioner] committed the crimes of which he was convicted." *Id.* at 30-31.

Lastly, because petitioner's imposed sentence did not "exceed[] the statutory minimum," or demonstrate that the sentencing statute was invalid; therefore, the Court denied the petition. *Id.* at 32; *Id.*, Dkt. No. 32.

## III. THE PRESENT PETITION

Petitioner's present petition is slightly difficult to decipher. He presents it as a "440.10(g) motion to amend." Pet. at 3. Presumably petitioner was attempting to amend his initial petition, pursuant to a New York State statute, given the discovery of new evidence.[2] However, a federal habeas petition cannot be amended pursuant to a state statute. Instead, it seems petitioner again seeks permission to file a successive habeas petition.

Petitioner alleges that he is entitled to relief because he can establish "objective factors that impeded petitioner's efforts to raise the instant claim in a prior petition," such as: "interference by officials in concurrence with that of organized crime members causing the unavailability of relevant facts, by theft of exonerating record evidence and the ingrained fear of either the continued murder, home invasions and attempted murder or kidnapping of petitioner's immediate family members." Pet. at 4. Petitioner contends that he has had to wait three decades for an allegedly corrupt investigator, Carmody, to retire from the New York State Bureau of Criminal Investigations in order to receive the discovery materials

---

[2] New York law allows an inmate to move to vacate a judgment when "[n]ew evidence has been discovered since the entry of a judgment based upon a verdict of guilty . . . , which could not have been produced . . . at the trial even with due diligence . . . and . . . is of such character as to create a probability that had such evidence been received at the trial the verdict would have been more favorable[.]" N.Y. Crim. Pro. Law § 440.10(g).

5

petitioner argues have been intentionally denied and withheld from him at Carmody's direction. *Id.* at 5. Specifically, petitioner identifies two audio tapes, created on or around December 8 and December 10, 1982, which contain exculpatory evidence demonstrating that the victim was intentionally murdered by a third person, Santangello, and petitioner's co-defendant in connection with mob activity: the tapes were continually hidden to prevent petitioner from developing a defense and to preserve the ongoing conspiracy between law enforcement and the mob. *Id.* at 6, 9-10, 12-13, 15-16, 18-19.

Further, petitioner contends prosecutors knowingly presented perjured testimony by Santangello to the grand jury. Pet. at 8, 14-15, 36. Petitioner only acquired this information because he received the grand jury testimony through other channels. *Id.* at 24. Had he not, petitioner would have been unaware that (1) Santangelo provided false testimony against petitioner; (2) state authorities allowed the perjured testimony before the grand jury to secure an indictment against petitioner; (3) the tapes provide corroboration of the perjury and their existence demonstrate the existence of prosecutorial misconduct; (4) petitioner's right to face his accuser was violated; (5) all of the elements of the crime of conviction were not appropriately presented to the grand jury; (6) Santangelo received immunity; and (7) the state knew Santangelo was involved with the mob and in the "Diamond Murders" and purposefully withheld this information despite the fact that it led to the murders becoming unsolved cold cases. *Id.* at 24-25. Petitioner concludes that the secrecy surrounding the grand jury proceedings is unconstitutional as it allows prosecutors to circumvent facts and present false evidence without any accountability. *Id.* at 26.

Lastly, petitioner contends he can demonstrate judicial misconduct as judicial officers failed to preserve material evidence favorable to petitioner's defense. Pet. at 29-30. Again,

6

petitioner advances a conclusion that the plea bargaining he engaged in was an "unconstitutional evil [that] convicts the guiltless and sets the guilty free." *Id.* at 36.

Petitioner also requested the Court appoint him counsel. Pet. at 41. Specifically, petitioner sought an attorney "in order to vacate this unlawful sentence of conviction." *Id.* For a more complete statement of petitioner's claims, reference is made to the petition and attachments.

## IV. DISCUSSION

The Antiterrorism and Effective Death Penalty Act (AEDPA) restricted the ability of petitioners to file second or successive petitions. A petition is a second or successive application when it "attacks the same judgment that was attacked in a prior petition," *Vasquez v. Parrott*, 318 F.3d 387, 390 (2d Cir. 2003) (internal quotation marks omitted), the prior petition was dismissed on the merits, *Murray v. Greiner*, 394 F.3d 78, 81 (2d Cir. 2005), and the later petition "raises a claim that was, or could have been, raised in [the] earlier petition." *James v. Walsh*, 308 F.3d 162, 167 (2d Cir. 2002); *accord, Adams v. Corcoran*, 416 F. App'x 84, 85 (2d Cir. 2011) ("While not every numerically second petition is considered a second or successive one, a dismissal on the merits . . . renders any subsequent petition second or successive within the meaning of AEDPA.") (internal quotation marks omitted).

A district court has no jurisdiction to decide a second or successive habeas petition on the merits without authority from the appropriate Court of Appeals. *Burton v. Stewart*, 549 U.S. 147, 153 (2007) (per curiam); *Torres v. Senkowski*, 316 F.3d 147, 149, 151-52 (2d Cir. 2003). Instead, the AEDPA requires individuals seeking to file a second or successive petition to obtain leave of the appropriate Court of Appeals for an order authorizing the

district court to consider the second or successive application. 28 U.S.C. § 2244(b)(1)-(3); *see also* Rule 9 of the Rules Governing Section 2254 Cases in the United States District Courts ("Before presenting a second or successive petition, the petitioner must obtain an order from the appropriate court of appeals authorizing the district court to consider the petition as required by 28 U.S.C. § 2244(b)(3) and (4)."); N.D.N.Y. L.R. 72.4(c) ("Before a second or successive application is filed in this Court, the applicant shall move in the Second Circuit Court of Appeals for an order authorizing the district court to consider the application.").

Here, petitioner admits that his current petition is successive as he is now able to "demonstrate objective factors" that he could not previously produce "in a prior petition." Pet. at 4. While petitioner does not specifically identify the date of his underlying criminal conviction, it is clear by the content of the present petition that he again attacks his same underlying criminal conviction. Petitioner currently argues that the evidence which he will now be able to discover will prove that Santangelo, as opposed to the petitioner, was the culprit, and petitioner had no knowledge of or participation in the murder of the victim during the robbery. *Id.* at 6, 9-10, 12-13, 15-16, 18-19. Petitioner was previously convicted for second degree murder and first degree robbery. *Marlowe*, 144 A.D.2d at 104. This was the same judgment of conviction that he challenged before in his prior habeas petition filed in this Court. *Marlowe I*, Dkt. No. 30 at 6. These claims have been dismissed on the merits. *Id.*, Dkt. No. 32. Moreover, there is no basis for concluding that petitioner could not have raised in his earlier petition the grounds for relief asserted in his present petition. In fact, it appears petitioner did raise some of these exact same arguments in his prior habeas petition. *See id.*, Dkt. No. 30 at 23-26 (discussing petitioner's speculative claims that petitioner acted in

8

duress because Santangelo and his co-defendant, as members of the mob, were involved in multiple murders and engaged in threatening behavior to intimidate petitioner by attempting to harm both petitioner and his family).

Because district courts have no jurisdiction to decide successive petitions, the Court is required to transfer this action to the appropriate Court of Appeals. *Torres*, 316 F.3d at 151-52. Accordingly, the Court transfers this action to the Second Circuit, pursuant to 28 U.S.C. § 1631, for a determination under 28 U.S.C. § 2244(b) as to whether the petitioner should be permitted to file a second or successive habeas petition in the district court. *Id.*[3]

## V. CONCLUSION

**WHEREFORE**, it is

**ORDERED** that the Clerk transfer this petition to the United States Court of Appeals for the Second Circuit, pursuant to 28 U.S.C. § 1631, for a determination under 28 U.S.C. § 2244(b) as to whether petitioner should be authorized to file a second or successive habeas petition in the district court; and it is further

**ORDERED** that petitioner's motion to appoint counsel (Pet. at 41) be dismissed without prejudice given the Court's lack of jurisdiction; and it is further

**ORDERED** that the Clerk serve a copy of this Order on petitioner in accordance with the Local Rules.

Dated: July 12, 2019

*Mae A. D'Agostino*
Mae A. D'Agostino
U.S. District Judge

---

[3] While the Second Circuit already issued a Mandate denying petitioner's motion to file a successive petition, it is unclear what the substance of that motion was. Therefore, in an abundance of caution, because the Court cannot tell whether these claims have already been evaluated and denied by the Second Circuit, the case will be transferred there instead of being dismissed.

9